IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: MANAGED STORAGE | : | Chapter 7 |
| INTERNATIONAL, INC., *et al*., | : | |
| | : | Case No. 09-10368 (MWF) |
| Debtors. | : | |
| _____ | : | |
| JEOFFREY L. BURTCH, Chapter 7 Trustee, | : | |
| | : | |
| Appellant, | : | |
| v. | : | Civ. No. 19-802 (LPS) |
| | : | |
| AVT TECHNOLOGIES, as successor-in-interest to | : | |
| AVNET, INC., | : | |
| | : | |
| Appellee. | : | |

**MEMORANDUM**

## I.    INTRODUCTION

Appellant Jeoffrey L. Burtch, Chapter 7 Trustee appointed in the above-captioned cases of

Managed Storage International, Inc. and certain related affiliates ("Debtors"), appeals the

Bankruptcy Court's April 17, 2019 decision, *In re Managed Storage International, Inc.*, 601 B.R.

261 (Bankr. D. Del. 2019) (B.D.I. 751, 752)[1] ("Decision"), finding on remand that the factors

enunciated in *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996), support approval, pursuant to Federal

Rule of Bankruptcy Procedure 9019, of a certain "Stipulation and Release" which, *inter alia*,

released creditor Avnet, Inc. ("Avnet") from liability on avoidance actions.  In addition to

Appellant's opening brief (D.I. 11), the Court has considered the answering brief (D.I. 12) of

appellee AVT Technology Solutions, LLC ("AVT"), as successor-in-interest to, and formerly part

_____

[1] The docket of the Chapter 7 cases, captioned *In re Managed Storage International, Inc.*, No. 09-10368 (MFW), is cited herein as "B.D.I. __."  On July 27, 2018, the parties submitted a Joint Pretrial Memorandum to the Bankruptcy Court (B.D.I. 736), which contained a number of agreed facts, and which is cited herein as "AF___".  On July 31, 2018, the Bankruptcy Court admitted into evidence 128 Joint Trial Exhibits, which are cited herein as "JTE___."

1

of, Avnet, as well as Appellant's reply (D.I. 13). For the reasons set forth below, the Court will affirm the Decision.

## II.     BACKGROUND

### A.     The Stipulation, Adversary Proceeding, and 2012 Dismissal

The Debtors filed petitions for relief under chapter 11 of Title 11 of the United States Code on February 4, 2009 (the "Petition Date"). *Managed Storage*, 601 B.R. at 264. For years pre-petition, Avnet had sold products to the Debtors on an unsecured basis. *Id.* By the end of October 2008, the Debtors had exceeded their credit limit with Avnet and entered into a purchase money security interest ("PMSI") on October 28, 2008. *Id.* Thereafter, the Debtors' and Avnet's business dealings continued on an unsecured basis until around December 17, 2008, when Avnet began to sell its products to the Debtors only on a secured basis pursuant to another PMSI. *Id.* As of the Petition Date, Avnet asserted a secured claim of $1,322,473.60 and an unsecured claim of $298,699.86. *Id.*

On the Petition Date, the Debtors filed a motion to approve the sale of all their assets (the "Sale Motion") to Laurus Masterfund Ltd. (In Liquidation) ("Laurus"). (B.D.I. 15, 16) On March 24, 2009, Avnet filed an objection to the Sale Motion, seeking clarification of the treatment of Avnet's PMSI collateral. *Managed Storage*, 601 B.R. at 264. As a result, the Debtors, the Committee of Unsecured Creditors, and Avnet entered into a stipulation on April 1, 2009 (the "PMSI Stipulation"), which provided that "[t]he Debtors agree that they will maintain any and all funds they receive from accounts receivable that are subject to the December PMSI in a segregated account." *Id.*; *see also* JTE 11. Despite the language contained in the PMSI Stipulation, the Debtors did not segregate the funds related to Avnet's collateral. *Managed Storage*, 601 B.R. at 264.

Between October and December 2009, counsel for AVT, counsel for Debtors, Kathy Kagay, Senior Director of Credit at AVT, and Anthony DiPaolo, former CFO of the Debtors, exchanged communications regarding reconciling the amount owed to Avnet under the PMSI Stipulation, which was agreed to be at least $1,270,814.47. (AF 56-65; JTE 17, 41, 46, 48, 61, 62, 127 at 73-74), 128 at 53)

In January and February 2010, counsel for Avnet, counsel for Debtors, and counsel for Laurus exchanged communications in an attempt to resolve the PMSI dispute and have the Avnet PMSI monies paid to Avnet. Avnet provided copies of the PMSI documentation, hearing transcripts, relevant pleadings and email correspondence, and copies of the reconciliation of the amounts due to Avnet to counsel for Laurus. (AF66) On January 26, 2010, counsel for Avnet emailed counsel for Laurus and counsel for Debtor regarding Avnet's valid PMSI. (AF67; JTE74) Because both the Debtors and Laurus did not turn over Avnet's PMSI collateral, on February 24, 2010, Avnet filed its *Motion Of Secured Creditor Avnet, Inc., To Enforce Sale Order To Specifically Exclude Avnet PMSI Collateral From Sale Assets And To Compel Laurus Master Fund, Ltd., Valens Offshore SPV I, Ltd., Valens Offshore SPV II, Corp., Valens U.S. SPV I, LLC, And/Or Psource Structured Debt Limited, To Turn Over Avnet Collateral* (the "Avnet Motion to Compel"). (B.D.I. 371; AF69; JTE13; *Managed Storage,* 601 B.R. at 264)

On April 13, 2010 at 6:51 a.m., Laurus' counsel, via email informed all parties, including Avnet's counsel, Debtors' counsel, Laurus representatives, and Committee counsel, that Laurus and Avnet had agreed to settle the Avnet Motion to Compel and the dispute regarding the Avnet PMSI collateral for $975,000 plus the parties' exchange of general releases. (AF74; JTE111)

Anthony DiPaolo, former CFO of the Debtors, stated that the terms of this settlement were good based on "how big a discount Avnet was willing to take." (JTE128 at 61) Thereafter, on May 19, 2010, Avnet filed the Stipulation and Release, executed by the Debtors, Avnet, and Laurus,

which globally resolved the Avnet Motion to Compel, and the Bankruptcy Court subsequently approved it. (B.D.I. 399) The Stipulation and Release provided that Laurus would pay Avnet $975,000 and that Laurus and the Debtors would release Avnet from any and all claims in exchange for Avnet releasing the Debtors and Laurus from any liability for claims relating to Avnet's PMSI collateral, with the exception of Avnet's unsecured claim for $298,699.86 (materially discounted from the agreed amount owed to Avnet of $1,270,814.4, and excluding any damages or penalties for violating the PMSI Stipulation). (*Id.*; *Managed Storage*, 601 B.R. at 265)

On November 3, 2010, the Court converted the Debtors' cases to Chapter 7. *See Managed Storage*, 601 B.R. at 265. Appellant subsequently filed a complaint against Avnet seeking to avoid and recover $5,444,541.11 as an alleged preference pursuant to 11 U.S.C. § 547(b). *Id.* On November 26, 2012, the Bankruptcy Court granted Avnet's Motion to Dismiss and ruled that: (1) the Stipulation was binding on Appellant; (2) the release covered preference claims under Sections 547 and 550 of the Bankruptcy Code; and (3) there was nothing defective in the notice pursuant to which the Bankruptcy Court issued its order approving the Stipulation and Release. *Burtch v. Avnet*, 2012 WL 5921723 at *3-8 (Bankr. D. Del. Nov. 26, 2012), *rev'd and remanded sub nom. Burtch v. Avnet, Inc.*, 527 B.R. 150 (D. Del. 2015).

### B.     The Appeal and the 2015 Remand

Appellant appealed the Bankruptcy Court's dismissal of the adversary proceeding, arguing that the Bankruptcy Court erred by (1) incorrectly finding that the Debtors received adequate consideration for the general releases contained in the Stipulation and Release, (2) incorrectly finding that Appellant is bound to the Stipulation and Release, as the Bankruptcy Court "ignored the parties' failure to move for Bankruptcy Court approval of a compromise or settlement 'after notice and a hearing' as required under Federal Rule of Bankruptcy Procedure 9019(a)," and

(3) incorrectly finding that Avnet, Laurus, and the Debtors provided adequate notice to creditors regarding the Stipulation and Release.

On January 16, 2015, this Court issued its decision reversing and remanding the adversary proceeding back to the Bankruptcy Court. *Burtch v. Avnet*, 527 B.R. 150 (D. Del. 2015). The Court affirmed the Bankruptcy Court's conclusions that (1) Appellant is bound by the terms of the Stipulation, and (2) the release included preference actions under Sections 547 and 550 of the Bankruptcy Code. *Id.* at 154. However, the Court remanded the matter back to the Bankruptcy Court for the purpose of reviewing the issues of notice to the Committee (and creditors) and also to "assess the Stipulation and Release by the standards of *In re Martin*." *Id.* at 157. In its 2012 appellate filings before this Court, Appellant never raised an argument that counsel for Debtors was without authority to enter into the Stipulation and Release and did not appeal this Court's 2015 finding that Appellant was bound by the terms of the Stipulation and Release.

### C.    The 2019 Decision and Second Appeal

On remand, the Bankruptcy Court held a hearing on March 18, 2015, and directed Avnet's counsel to serve a 9019 motion, seeking approval of the settlement embodied in the Stipulation and Release, on all of the Debtors' creditors in accordance with Bankruptcy Rule 9019 and the Bankruptcy Court's Local Rule 2002-1(b). (B.D.I. 674, 3/18/15 Hr'g Tr. at 34) No objection was filed by any creditor as a result of that notice. *Managed Storage*, 601 B.R. at 265. Appellant alone objected and, after discovery was conducted, the Bankruptcy Court held an evidentiary hearing on July 31, 2018. (B.D.I. 741) The parties entered 128 joint trial exhibits into evidence and presented argument on the *Martin* factors, including what the possible recovery would have been had the Debtors pursued an avoidance action as opposed to entering into the Stipulation and Release. *Managed Storage*, 601 B.R. at 265. The parties supported their arguments with deposition testimony, payment histories, and other exhibits to demonstrate that their positions had evidentiary

support.  On August 14, 2018, the parties submitted Proposed Findings of Fact and Conclusions of

Law.  (B.D.I. 743, 744-1)  On April 19, 2019, the Bankruptcy Court issued the Decision, approving

the Stipulation and finding that all four *Martin* Factors weighed in favor of Avnet.  *Managed

Storage*, 601 B.R. at 261.

On April 30, 2019, Appellant timely appealed the Decision.  The appeal is fully briefed.

(D.I. 11, 12, 13)  The Court did not hear oral argument because the facts and legal arguments are

adequately presented in the briefs and record, and the decisional process would not be significantly

aided by oral argument.

## III.    JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), district courts have mandatory jurisdiction to hear appeals

"from final judgments, orders and decrees" and discretionary jurisdiction over appeals "from other

interlocutory orders and decrees."  28 U.S.C. § 158(a)(1), (3).

*Standard of Review.*  The Court reviews a settlement approved pursuant to Bankruptcy Rule

9019 for abuse of discretion.  *See In re Nutraquest*, 434 F.3d 639, 644 (3d Cir. 2006); *Martin*, 91

F.3d at 393.  "We examine [the Bankruptcy Court's] findings for an abuse of discretion, at root a

deferential standard of review.  We do not 'disturb an exercise of discretion unless there is a definite

and firm conviction that the court . . . committed a clear error of judgment in the conclusion it

reached upon a weighing of the relevant factors.'"  *Nutraquest*, 434 F.3d at 645 (quoting *In re

Orthopedic Bone Screw Prods. Liab. Litig.,* 246 F.3d 315, 320 (3d Cir. 2001)).  An abuse of

discretion "must rest on a clearly erroneous finding of fact, an errant conclusion of law or an

improper application of law to fact."  *In re Diet Drugs*, 778 F. App'x 111, 115 (3d Cir. 2019).  A

court abuses its discretion where its decision is "arbitrary, fanciful or clearly unreasonable."

*Democratic National Committee v. Republican National Committee*, 673 F.3d 192, 201 (3d Cir.

2012) (internal quotation marks omitted); *see also Zacharias v. Foreman*, 2015 WL 849048, at *1

(D. Del. Feb. 23, 2015).  The test for an abuse of discretion is "not what this court would have done under the same circumstances; that is not enough.  The court must feel that only one order could have been entered on the facts."  *Diet Drugs*, 778 F. App'x at 115.

*Standard for Approval of a Settlement Under Bankruptcy Rule 9019.*  This Court remanded this case to the Bankruptcy Court with instructions regarding proper notice to parties in interest and to assess the Stipulation and Release under the *Martin* factors.  *Burtch v. Avnet,* 527 B.R. 150, 157 (D. Del. 2015).  For purposes of evaluating the approval of a settlement under Bankruptcy Rule 9019, the decision whether to approve a settlement is within the sound discretion of the Court.  *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014).  Courts rely on four factors in making this determination: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation and the expense, inconvenience, and delay involved; (4) and the paramount interest of the creditors."  *Martin*, 91 F.3d at 393.

The Court need not be convinced that the settlement is the best possible compromise; instead, the court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness.  *Nortel*, 522 B.R. at 510; *see also In re Exide Tech.*, 303 B.R. 48, 68 (Bankr. D. Del. 2003) (explaining Court is not tasked with deciding issues of law or fact in evaluating compromise under first factor enumerated in *Martin*).  Moreover, the Court need not conduct a mini-trial or a full evidentiary hearing.  *In re Capmark Financial Group Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010).  The Court must only find that the settlement falls within the reasonable range of litigation possibilities.  *In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004).

In addition to these criteria, courts have also scrutinized additional factors, such as: the competency and experience of counsel who support the settlement; the relative benefits to be received by individuals or groups within the class; the nature and breadth of releases to be obtained

by the parties to the settlement; and the extent to which settlement is the product of arm's length bargaining. *See In re Spielfogel,* 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re 47-49 Charles Street, Inc.,* 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Dow Corning Corp.,* 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

## IV.    DISCUSSION

Appellant has challenged the Decision with respect to the first and fourth *Martin* factors (probability of success and paramount interests of creditors). As the Court find no abuse of discretion in the Bankruptcy Court's thorough evaluation of the *Martin* factors, the Decision will be affirmed.

### A.    First *Martin* Factor – Probability of Success

The Bankruptcy Court divided its analysis of the first *Martin* Factor into three issues, all of which Appellant challenges: (1) that Avnet had a greater probability of success on its ordinary course of business defense with respect to Appellant's preference claim, *Managed Storage*, 601 B.R. at 268; (2) that Avnet would have succeeded in any contempt motion against the Debtors in the main bankruptcy case, *id.* at 269; and (3) that counsel for Debtor had authority to enter into the Stipulation, *id.* at 270. Appellant contends that all of the above findings of the Bankruptcy Court were clearly erroneous – that is, Appellant contends that the Bankruptcy Court's decision was "arbitrary, fanciful or clearly unreasonable." *DNC*, 673 F.3d at 201.

#### 1.    Ordinary Course Defense

Appellant asserts that the Bankruptcy Court abused its discretion in concluding that the ordinary course defense pursuant to § 547(c)(2)(A) applied to the Preference Claims. (D.I. 11 at 4). Specifically, Appellant argues that the Bankruptcy Court failed to consider the entire historical period of dealings between the Debtors and Avnet and misapplied the law as it pertains to the

changed terms between the parties immediately prior to and during the Preference Period. (D.I. 11 at 4, 11-22; D.I. 13 at 3-5, 10-13)

Section 547(c)(2) of the Bankruptcy Code protects payments that do not result from unusual or extraordinary debt collection practices. *See In re Powerwave Technologies, Inc.* 2017 WL 1373252, at *7 (Bankr. D. Del. 2017). In order to establish an ordinary course of business defense, Avnet would have to demonstrate that the debt was incurred in the ordinary course of business or financial affairs of the parties; and either the transfer was made in the ordinary course of business or financial affairs of the parties or the transfer was made according to ordinary business terms. *See* 11 U.S.C. § 547(c)(2)(A)-(B). The test for ordinary course under § 547(c)(2)(A) requires a review of the consistency of transactions between the creditor and the debtor before and during the preference period. *See Burch v. Texstars, Inc.*, 2013 WL 5488476, *3 (Bankr. D. Del. 2013).

As the Bankruptcy Court correctly noted, courts typically consider five factors in determining whether payments made in the preference period are in the ordinary course of business. Those factors are: (1) the length of time the parties engaged in the type of dealing at issue; (2) whether the subject transfers were in an amount more than usually paid; (3) whether the payments at issue were tendered in a manner different from previous payments; (4) whether there appears to have been an unusual action by the creditor or debtor to collect on or pay a debt; and (5) whether the creditor did anything to gain an advantage (such as gain additional security) in light of the debtor's deteriorating financial condition. *See Managed Storage*, 601 B.R. at 266 (citing *In re Hechinger Inv. Co. of Delaware, Inc.,* 489 F.3d 568, 578 (3d Cir. 2007)).

*Length of historical analysis*. Appellant contended that payments in the preference period beyond fourteen days (totaling $1,853,641.77) were outside the ordinary course of business. Appellant further argued that the average payment more than doubled from 4.75 days in arrears pre-preference to 13 days in arrears in the preference period, which also shows that the payments were

outside the ordinary course.  Avnet compared the pre-preference period range of payments to the range in the preference period and argued that transfers outside the ordinary course of business totaled no more than $652,000.

In evaluating the merits of AVT's defense, the Bankruptcy Court applied the correct standard and carefully considered the competing analyses.  With respect to whether the transfers were made in the ordinary course of business, courts generally compare the actual "payment after invoice" range during the pre-preference period (the "Historical Period") with the actual "payment after invoice" range during the preference period and assess whether the payments in each period were sufficiently similar.  *See In re American Home Mortgage Holdings, Inc.*, 476 B.R. 124, 138 (Bankr. D. Del. 2012) (comparing actual range of days outstanding on invoices paid during Historical Period to actual days outstanding on invoices paid during preference period); *In re Archway Cookies*, 435 B.R. 234, 243 (Bankr. D. Del. 2010) (same).  As the Bankruptcy Court noted, courts have concluded that a comparison of the ranges (the method Avnet used) is a useful measure of whether payments fall within the ordinary course.  *Managed Storage*, 601 B.R. at 267. For example, in *American Home Mortgage*, the court found that payments made during the Historical Period were received between 7 and 67 days after invoice and that payments made during the preference period were received between 34 and 62 days, squarely within the historical range and sufficient for the defendant to successfully assert an ordinary course of business defense.  *See Am. Home Mortgage,* 476 B.R. at 131.  By comparison, as the Bankruptcy Court noted, courts have been skeptical of using an average of payment terms (the method the Appellant used).  *See Managed Storage,* 601 B.R. at 267 (citing *In re Glob. Tissue L.L.C.*, 106 F. App'x 99, 102 (3d Cir.

2004) ("The Trustee's reliance on the average payment time, as is often the case with statistics, does not portray the complete picture of [the Debtors'] payment history."))[2]

In connection with Avnet's ordinary course defense, the parties jointly submitted a historical analysis prepared by Avnet ("Avnet Ordinary Course Analysis"). (B.D.I. 741) The Avnet Ordinary Course Analysis covered nine months of the parties' business dealings.[3] The Bankruptcy Court concluded that the range of dates that Avnet proposed (0-55 days) was "not broad" and that the Appellant's "average" calculation was only eight days longer that the pre-preference period, which was not significant enough to render the payments as out of the ordinary.[4] *See Managed Storage*, 601 B.R. at 267-68.

Contending that this conclusion amounted to an abuse of the Bankruptcy Court's discretion, Appellant argues that Avnet failed to present an adequate historical analysis. (D.I. 11 at 19)

[2] The Bankruptcy Court did note that courts will rely on a comparison of averages between the preference and pre-preference periods when the range is so broad that it may skew the analysis by impermissibly expanding the ordinary course of business. *Id.* (citing *In re Quebecor World (USA) Inc.*, 491 B.R. 379, 386-87 (Bankr. S.D.N.Y. 2013) (finding that average time of payment can often be starting point and ending point of ordinary course analysis); *In re Forklift LP Corp.,* 2006 WL 2042979, at *4 (D. Del. July 20, 2006) (relying on weighted average in historical period compared to preference period)).

[3] In this case, it is undisputed that the preference period – that is, the 90-day period prior to the Petition Date – is November 6, 2008 to February 4, 2009. (AF79)

[4] As AVT points out, courts do not require rigid similarity to prior dealings between the parties. *See In re Cherrydale Farms, Inc.*, 2001 WL 1820323, at *3 (Bankr. D. Del. Feb. 20, 2001) (citing *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 96 B.R. 474, 476-77 (D. N.J. 1998), *aff'd,* 891 F.2d 66 (3d Cir. 1989)). Rather, only "some consistency" is required. *In re Schick*, 234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999); *see also In re Lan-Yik Foods Corp.*, 185 B.R. 103, 111 (Bankr. E.D.N.Y. 1995) (inquiry into "ordinariness" suggests "some consistency" with other business transactions between parties, rather than rigid similarity to past transactions); *see also In re Conex Holdings, LLC*, 522 B.R. 480, 490 (Bankr. D. Del. 2014) (holding that 7-day change in average days to pay is not sufficient to take preferential transfers outside ordinary course of business); *Archway*, 435 B.R. at 244 (holding that 5-day difference in average days to pay is "not material"); *In re Radnor Holdings Corp.*, No. 06-10894 (PJW), 2009 WL 2004226, at * 5 (Bankr. D. Del. July 9, 2009) (noting that "small deviations in payment timing may not be so significant as to defeat the ordinariness of such payments").

According to Appellant, the Bankruptcy Court used a range analysis based upon historical payment history but "ignored" the fact that, despite the parties having a relationship dating back more than three years, AVT only submitted nine months of historical data. (*Id*. at 4) Appellant argues that cases in this District have generally required two years as a period sufficient to establish the ordinary course of dealings between parties, adding that the Bankruptcy Court in this case "clear[ly] err[ed]" by considering too short a period. (*Id.* at 4, 19; *see also* D.I. 13 at 12) AVT counters that the Avnet Ordinary Course Analysis was jointly submitted as a trial exhibit without objection, and that at no point during the July 31, 2018 hearing did Appellant argue that the duration of the Avnet Ordinary Course Analysis was insufficient. (D.I. 12 at 23) Under these circumstances, AVT argues, Appellant waived this ground to object to Avnet's evidence or the Bankruptcy Court's consideration of it. Appellant responds that the issue was raised in his objection to the renewed 9019 motion and was therefore preserved for appeal. (D.I. 13 at 11)

Appellant's objection to the renewed 9019 motion, dated March 14, 2018, indicates that he had requested (two years earlier) additional historical data from Avnet but did not receive it. (B.D.I. 728 at 26 n.7 & Ex. 13) The parties' Joint Pretrial Memorandum, dated July 27, 2018 (B.D.I. 736), provided the Bankruptcy Court with a detailed summary of the transfers made during the preference period (*id*. at ¶ 80), the invoices issued by Avnet during the preference period (*id*. at ¶ 83), and also identified the Avnet Ordinary Course Analysis (*id*. at ¶ 85). The only indication of a disagreement between the parties as to the historical data appears in paragraph 83, which states that "The Parties do not agree as to the appropriate application of these invoices pursuant to Section 547(c)(4)[5] of the Bankruptcy Code" – in other words, the parties did not agree on Avnet's new

---

[5] 11 U.S.C. § 547(c)(4) (providing that trustee may not avoid a transfer "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor" that was "not secured by an otherwise unavoidable security interest" and " on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor").

value defense.  The Joint Pretrial Memorandum states, "For the purpose of this Joint Pre-Trial Memorandum, the Parties do not dispute the invoice and payment dates as set forth in the Avnet Ordinary Course Analysis."  (*Id*. at ¶ 85)  The Trustee's own ordinary course analysis (*id*. at ¶¶ 139-41) is populated by Avnet's historical data and indicates no issue as to the historical length (*see also id*. ¶¶ 139-48).  It is undisputed that Appellant failed to raise this issue with the Bankruptcy Court at the time of the July 31, 2018 evidentiary hearing.  (*See* B.D.I. 741, 7/31/18 Hr'g Tr.)

Under these circumstances, the Court concludes that while Appellants did not waive their contention that the period examined by the Bankruptcy Court was too short simply by allowing the Avnet Ordinary Court Analysis document to be admitted without objection, Appellants did waive this argument by not fairly presenting it to the Bankruptcy Court.  After allowing the Avnet Ordinary Course Analysis to be admitted, Appellant did not raise any challenge or objection to the length of that analysis.  This was a waiver.  *See, e.g.*, *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998) ("[A] party who fails to object to errors at trial waives the right to complain about them following trial."); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992) ("It is axiomatic that a party who fails to object to errors or to raise issues at trial waives the right to complain on appeal.  This requirement is imposed so that courts have an opportunity to avoid errors, thus obviating an appeal.").

Even were Appellant's argument not waived, however, the Court finds ample evidence in the record to support the Bankruptcy Court's determination as to what was ordinary.  The Bankruptcy Court's consideration of a payment range, rather than an average, is well-supported by Third Circuit law, as noted above.  *See also Am. Home Mortgage,* 476 B.R. at 138; *In re: FBI Wind Down, Inc.*, 581 B.R. 116, 141 (Bankr. D. Del. 2018).  In evaluating the merits of AVT's ordinary course defense, the Bankruptcy Court was not required to conduct a mini-trial or a full evidentiary hearing; it was merely required to canvas the issues and determine whether settlement of the

preference claim fell within the reasonable range of litigation possibilities, somewhere above the lowest point in the range of reasonableness. There is sufficient evidence in the record to support the Bankruptcy Court's conclusion that AVT had a strong argument that the payment range of 0-55 days was ordinary.

*Change in credit terms.* Appellant further contends that the Bankruptcy Court misapplied the law as it pertains to the changed terms between the parties immediately prior to and during the preference period. The Bankruptcy Court determined that the institution of the December PMSI, when the Debtor was close to or exceeded its credit limit, was consistent with how Avnet customarily treated the Debtors and its other customers. *See Managed Storage*, 601 B.R. at 268. Appellant argues that Avnet's treatment of other creditors is not applicable to the subjective defense of 11 U.S.C. § 547(c)(2)(A). (D.I. 11 at 20) Appellant further argues that the imposition of a PMSI on October 24, 2008, less than two weeks prior to the Preference Period, should not suffice to make the December PMSI "ordinary." (*Id.*)

Courts have held that certain pressure tactics that existed consistently during both the historical and preference period can make those tactics "ordinary." *See, e.g, Burch v. Detroit Forming, Inc.*, 435 B.R. 234, 245 (Bankr. D. Del. 2010) (communications threatening to withhold shipments that occurred several months prior to preference period can make similar threats during preference period "within the ordinary course"); *In re Elrod Holdings Corp.*, 426 B.R. 106, 112 (Bankr. D. Del. 2010) ("Throughout its ten year relationship with the Debtors, Defendant customarily called several times to collect unpaid invoices and threatened to withhold shipment."). Appellant argues, however, that "simply because pressure and a change of business terms have occurred once before does not make such changes ordinary." (D.I. 11 at 21) (citing *Burch v. Prudential*, 2013 WL 3778141, at *9 (Bankr. D. Del. 2013), *aff'd* 729 F. App'x 153 (3d Cir. 2018) ("Such undue credit pressure, even if conducted twice in the parties' three-year business

relationship, is a zealous creditor's attempt to collect on a debt and does not constitute the ordinary course of business."))

In determining whether payments made in the preference period are in the ordinary course of business, no one factor is determinative. *See Burtch v. Revchem Composites, Inc.*, 463 B.R. 302, 306 (Bankr. D. Del. 2010). Here, the Bankruptcy Court determined that the change in credit terms from unsecured to secured did not defeat Avnet's ordinary course of business defense where the remaining *Hechinger* factors supported the defense. The Bankruptcy Court made it clear that it considered the following in evaluating the *Hechinger* factors: that it was common for Avnet to use purchase money security interests when customers reached their credit limit; that the Debtors reached a $4 million credit limit in October 2008 (AF86-87); that the parties did business under a purchase money security interest in October 2008 (JTE17); that later in December, when the Debtors were close to their credit limit again, Avnet required a purchase money security interest (*id.*; JTE125; AF89); that the Debtors and Avnet had a lengthy relationship (JTE 17, 125); that the payments made by Debtors in the Preference Period were not in unusual amounts (JTE121); that the Preference Period payments were not made in a manner materially different from historical payments (*id.*); and that Avnet took no unusual actions to collect from the Debtors. *See Managed Storage*, 601 B.R. at 268. The record evidence, as well as the Bankruptcy Court's careful analysis, support its conclusion as to Avnet's likelihood of prevailing on its ordinary course of business defense. There is no basis to find that the Bankruptcy Court's conclusion in this regard was "arbitrary, fanciful or clearly unreasonable," *DNC*, 673 F.3d at 201, or presents a "clear error of judgment in weighing factors," *Nutraquest*, 434 F.3d at 645.

In sum, the Court finds no abuse of discretion in the Bankruptcy Court's determination that Avnet had a high probability of success on its ordinary course of business defense with respect to the Appellant's preference claim.

## 2. Motion to Compel and Contempt

The Bankruptcy Court concluded that Avnet "presented sufficient evidence to show that it would have a high probability of success on a contempt action against the Debtors." *Managed Storage*, 601 B.R. at 269. Appellant's challenge to the Bankruptcy Court's conclusion is based on his assertion that Debtors' counsel did no work in negotiating the Stipulation. (D.I. 11 at 16-18) Appellant argues that under the first *Martin* factor, a Debtor seeking to settle claims for or against the estate must provide a basis for evaluating the strengths and weaknesses of the litigation. According to Appellant, a debtor must have made a reasonable evaluation of the merits of litigation and, here, the Debtors failed to "show[] that there was a process whereby the Debtors exercised any judgment at all." (*Id.* at 17) Appellant argues that the evidence submitted to the Bankruptcy Court does not support any finding that the Debtors' counsel undertook any serious evaluation of the Stipulation or that the Debtors' agreement to the Stipulation was an exercise of their business judgment. (*See id.*)

In fact, however, the record contains sufficient evidence to support the Bankruptcy Court's conclusion. The record reflects that Pachulski Stang Ziehl & Jones LLP ("PSZJ") was retained by the Debtors as counsel. (B.D.I. 101) Appellant never sought to challenge PSZJ's retention. As early as March 3, 2009, the Debtors' attorneys were considering preference claims. (JTE 128 at 34) On March 4, 2009, counsel for Debtors and counsel for Laurus traded email correspondence regarding all potential preference liability in the case. (JTE 39) The parties entered into the PMSI Stipulation, which covered "any and all funds" related to the PMSI collateral. (JTE 12) It is undisputed that the Debtors failed to segregate funds as required and, in fact, transferred Avnet's collateral to Laurus. (AF 56-65; JTE 17, 41, 46, 48, 61, 62, 127 at 73-74, 128 at 53); *Managed Storage*, 601 B.R. at 269. In reconciling the amount that was due to Avnet under the PMSI Stipulation, the Debtors had concluded it was at least $1,270,814.47. *See Managed Storage*, 601

B.R. at 269.  The record further shows that while counsel for Laurus was negotiating a settlement with Avnet, counsel for Laurus was also in regular contact with counsel for Debtors about the status of negotiations.  (JTE 69, 75, 77, 79, 80, 82, 86, 87, 90, 109, 110)  During those discussions, counsel for Laurus and counsel for Debtors conceded that they could not control what Avnet would do and that there could be "complications" – implying that they were considering possible contempt and other claims.  (JTE77)  PSZJ billed time and was compensated for negotiating the Stipulation and communicating with Debtors regarding the Stipulation.[6]  Appellant never challenged PSZJ's compensation for post-sale services rendered as counsel to the Debtors.  There is also evidence in the record that PSZJ communicated with Anthony DiPaolo, former CFO of the Debtors, who agreed that the terms of the settlement were good given "how big a discount Avnet was willing to take." (JTE128 at 61)

Appellant has not demonstrated that PSZJ entered into the Stipulation on behalf of its clients, the Debtors, without any consideration of the Stipulation's terms.  Instead, there is sufficient evidence in the record to support the Bankruptcy Court's findings that the Debtors entered into the Stipulation and Release as an exercise of business judgment and that Avnet had a high probability

---

[6] JTE 21-22, 76-78.  In the Seventh Monthly Fee Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, As Counsel to the Debtors and Debtors in Possession, for the Period From August 1, 2009 Through April 30, 2010 (B.D.I. 402) ("PSZJ Seventh Fee Application"), PSZJ billed time to the estate for matters relating to the dispute raised by Avnet in its Motion to Compel and the Settlement for the period of October 21, 2009 through April 14, 2010.  (JTE22; *see also id.* at 20; AF76)  The subsequent Eighth and then Final applications for compensation show additional work performed by PSZJ in connection with Avnet's motion to compel, the settlement, and the Stipulation.  (*See, e.g.*, B.D.I. 422; AF77; JTE22; B.D.I. 423-10; AF78; JTE 21)  Appellant argues that PSZJ's time entries relating to the Stipulation amount to only ten hours, do not include the terms "preference" or "contempt," and are insufficient to support a finding that the preference and contempt claims were analyzed.  (D.I. 13 at 7-8)  In fact, each fee application is supported by a declaration or certification of counsel.  The Court disagrees with Appellant's argument that there is no evidence to support a finding that Debtors' counsel analyzed these claims.

of succeeding in its claims against Debtors for violating the terms of the PMSI Stipulation. The Court finds no abuse of discretion as to either conclusion.

### 3. Enforceability of the Stipulation

Appellant argues that the Bankruptcy Court erred in finding that the Stipulation was properly authorized. (D.I. 11 at 14-16) As an initial matter, both the Bankruptcy Court, on two separate occasions, *Burtch v. Avnet*, 2012 WL 5921723 at *3-4; *Managed Storage*, 601 B.R. at 269-70, and this Court, in the prior appeal, *Burtch v. Avnet*, 527 B.R. at 154, ruled that the Stipulation was enforceable against Appellant. Appellant argues for the first time in this appeal that, despite having its retention by Debtors approved by the Bankruptcy Court, PSZJ was acting *ultra vires* when it was representing the Debtors in negotiating and entering into the Stipulation (and presumably other post-sale matters).

AVT counters that, not having raised the issue of authority and enforceability in the first appeal, this argument has been waived. The law in the Third Circuit is that a party who fails to raise an issue on appeal, waives that issue. *See Baloga v. Pittston Area School District*, 927 F.3d 742, 753 n.9 (3d Cir. 2019) (failure to contest finding of District Court waives any argument to the contrary); *Jones v. Hashagen*, 512 F. App'x 179, 182 (3d Cir. 2013) ("[A]n appellant's failure to raise an issue on appeal generally constitutes waiver."); *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1065-66 (3d Cir. 1991).

This Court specifically held that the Stipulation binds the Appellant. *See Burtch v. Avnet*, 527 B.R. at 154. In the first iteration of opposing Avnet's motion to dismiss in the Bankruptcy Court and in the first appeal in this Court, Appellant never raised the argument that PSZJ did not have authority to enter into the settlement, thereby waiving that argument. Notably, after this Court issued its ruling affirming that the Appellant was bound by the Stipulation, *Burtch v. Avnet*, 527 B.R. at 154, Appellant never took an appeal to the Third Circuit.

According to Appellant, his enforceability argument is not waived because he only learned of the "serious defects" associated with the Stipulation "through the litigation process and discovery." (D.I. 13 at 9-10) Presumably Appellant is referring to the litigation and discovery which took place following remand. The Court is not persuaded by this argument. In essence, Appellant is arguing that there was no one with authority to execute the Stipulation and Release on behalf of the Debtors following the asset sale to Laurus, and that the *Martin* standards cannot be satisfied "without direct evidence that the Debtors . . . approved the waiver of the preference claims through a legitimate corporate process." (D.I. 13 at 10) If it is in fact the case that, as a result of the asset sale, there remained, as a matter of corporate law, no one with authority to approve the settlement on the Debtors' behalf, that fact was apparent from the record, including the sale transaction documents filed by the Debtors and approved by the Bankruptcy Court. The only new evidence Appellant can point to is DiPaolo's deposition testimony that he does not believe he had authority to approve the Stipulation. But, given that such testimony merits little weight in the absence of the pertinent transactional and corporate documents – all of which have long been in the record – the lack of any persuasive explanation for the belated timing of Appellant's argument, and the fact that this case was remanded only for particular purposes not including a new *ultra vires* argument, the Court agrees with Avnet that this argument has been waived.

Even assuming Appellant's argument as to enforceability was not waived long ago, the Bankruptcy Court properly determined that Debtors' counsel had at least apparent authority to execute the stipulation. *Managed Storage*, 601 B.R. at 270. As the Bankruptcy Court explained:

> [A]s is usual in these cases, the sale agreement explicitly states that "[s]o long as the Chapter 11 Cases are pending" the Sellers shall have access to the books, records, and former employees of the Debtors "for the purposes of continuing administration of the Chapter 11 Cases." DiPaolo was the CFO of the Debtors and the Debtors' representative in this bankruptcy case. The Sale Order did not end his authority, but extended it until completion of the administration of the chapter 11.

> Avnet presented evidence that the Debtors' counsel and Mr. DiPaolo
> were involved in the bankruptcy administration after the sale closed.
> For example, Mr. DiPaolo and Debtors' counsel communicated at
> length with Avnet after entry of the Sale Order regarding the
> reconciliation of Avnet's PMSI proceeds . . .  Avnet has presented
> credible evidence that Debtors' counsel at least had implied authority
> to enter into the Stipulation on behalf of the Debtors.

*Id*. at 269-70 (citing B.D.I. 192-1 ¶ 8.10; JTE 68; *Schwartz v. Chase*, 2010 WL 2601608, at *5 (Del.

Ch. June 29, 2010) (implied authority "allows an agent to act based on the agent's reasonable

interpretation of the principal's manifestation in light of the principal's objectives and other facts

known to the agent").

As the Bankruptcy Court points out, the record reflects that on May 11, 2010, just prior to

the Bankruptcy Court's approval of the Stipulation and Release, DiPaolo emailed Debtors' counsel,

stating that he did not wish to make any changes to the Stipulation.  (JTE 116; B.D.I. 724-13)

Based on this and other post-sale communications cited by AVT, together with the language of the

sale agreement, the Court finds no error in the Bankruptcy Court's determination that Avnet

presented credible evidence that Debtors' counsel had at least implied authority to enter into the

Stipulation and Release on behalf of the Debtors and that this did not undermine Avnet's likelihood

of success in the litigation.

### B.     Fourth *Martin* Factor – Paramount Interests of Creditors

In assessing the Fourth *Martin* Factor – that the settlement was in the best interests of the

creditors – the Bankruptcy Court concluded that "[w]hen comparing what the Debtors faced at the

time of entering into the Stipulation with what the Debtors may have gained in protracted litigation,

the Court finds that the Debtors' decision to enter into the Stipulation fell far above the lowest point

of reasonableness."  *Managed Storage*, 601 B.R. at 271.  To contest this determination, Appellant

simply argues that the Bankruptcy Court's consideration of Avnet's claim under 11 U.S.C. § 502(h)

was clearly erroneous and its determination that Avnet would have had a large administrative or

superpriority claim was unsupported by the record. (D.I. 11 at 23) These issues do not undermine the Bankruptcy Court's determination.

The Bankruptcy Court concluded that the settlement of the Avnet Motion to Compel achieved finality and certainty for the Debtors' estates with respect both to the Avnet Motion to Compel and any preference action. Specifically, it saved the estate money undisputedly owed to Avnet: over $1.3 million plus any penalties that could have been imposed by the Bankruptcy Court for violation of its order (which was within its discretion). There is no dispute that this would be an administrative claim. There is also no dispute that such litigation would have been contentious, so the resolution saved the estates significant legal fees and costs, as Debtors were required under the sale documents to pay their own legal fees as well as those of Laurus. Such litigation may have resulted in an appeal, further driving up costs. The parties likely would have had to incur the expense of retaining experts, given that an ordinary course of business defense was involved. The Bankruptcy Court also properly considered the dilution effect of Avnet's § 502(h) claim as one factor, though it was not determinative of its analysis. *See Managed Storage*, 601 B.R. at 271.

Appellant has provided no analysis, and the record contains no evidence, to disturb the Bankruptcy Court's conclusion that the settlement "fell far above the lowest point of reasonableness." The Bankruptcy Court's conclusion was not an abuse of discretion.

## V. CONCLUSION

As set forth above, the Bankruptcy Court did not abuse its discretion in concluding that the first and fourth *Martin* factors weigh in favor of approving the Stipulation and Release. Accordingly, the Court will affirm the Decision. An appropriate Order follows.

March 31, 2020
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE